**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAULA S. BHATT,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JOHN JAY HOFFMAN, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 15-005 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court upon Plaintiff Chaula S. Bhatt's ("Plaintiff") *in forma pauperis* application ("IFP Application") (IFP Appl., ECF No. 38) and Second Amended Complaint ("Complaint") (Second Am. Compl. ("SAC"), ECF No. 39). For the reasons set forth below, the Court grants Plaintiff's IFP Application and dismisses Plaintiff's Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(b).

**I.　BACKGROUND**

　　The Court considers the allegations contained in Plaintiff's Complaint as true and recites only those facts relevant for purposes of this screening Opinion. Plaintiff brings various federal

and state claims under thirty-nine counts against at least sixty defendants[1] in a 120-page Complaint. (*See generally* SAC.)

Plaintiff alleges that she worked in some capacity for AT&T and its affiliated organizations until she was terminated from three employment contracts: AT&T terminated her employment contracts on July 13, 2009, and May 10, 2010; and Planet Associates terminated a contract on June 16, 2011. (*See id.* ¶¶ 92, 99, 111.) Her claims under Counts I through VI and X relate to these terminations. (*See id.* ¶¶ 274–348, 376–88.)

Plaintiff was arrested and charged with criminal mischief on August 8, 2011. (*See id.* ¶¶ 122, 128.) She alleges that AT&T employees, in conjunction with an outside law firm, conspired with Middletown Township prosecutors to "frame" her for these charges. (*See id.* ¶¶ 114–20.) Her claims under Counts VII through IX, XI, and XII relate to this arrest and subsequent prosecution. (*See id.* ¶¶ 349–75, 389–411.)

---

[1] Named Defendants include AT&T, Inc. ("AT&T"); Collabera; Inc.; Michael Chirico; Stephanie Serpico; Planet Associates Inc; Christopher Healy; Edward Amoroso ("Amoroso"); Michael Zinnikas; Peter Warshaw ("Warshaw"); Paula Dow; John Jay Hoffman; "Perth Amboy Municipality"; Wilda Diaz; Emery Toth; "Det. M. Valera"; "Perth Amboy Unknown Lieutenant"; Minoo Sadeghi; Angela McAllister; Kathie DeFuria; "Middletown Municipality"; Gerard Scharfenbergeris; Michael Fitzgeralz; Gerald Scharfenberger; Scott Basen; Daniel Sullivan; Richard Thompson; Christopher Porrino; Andrew Curey; Judge Diane Pincus; "Monmouth County Prosecutor Christopher G"; Emily Cartmell ("Cartmell"); Heck Noah; Nicole Wallace; Anita Gillyard; "Franceschini M"; Thomas Merlin; Grace Park; Kyle Loscasio; Judy Kramer; William Mosca; Roy Ventre; Joe Martinelli; Carol Gratacos; "7 witnesses of AT&T"; Middlesex County Correction Institute; "Named MCCI defendants," which ostensibly includes Thomas Bollaro ("Warden Bollaro"); "MCCI guard Ms. Huttonloch"; Gary M. Lanigan; Raymond Martinez; Key Auto Body Shop; "Unknown State Hwy Patrol Agent"; All Car Towing Inc.; CSC Holding Inc. ("CSC"); "Old Bridge Municipality"; Henry Owen; "Unknown Old Bridge Magistrate"; "Unknown Old Bridge Municipal Agent"; Rick Fuentes; "Aldercrest Inc./Glenwood Apartments & Country Club"; Dennis M. Galvin; Monmouth Medical Center; Matthew Geller; Angela Fang; Riverview Medical Center; Jennifer Velez; Mary E. O'Dowd; and "Dr. Ter[r]anova" ("Terranova"). (*See* SAC at *1–2; *see also id.* ¶¶ 44–82.)

After her arrest, in August 2011, Plaintiff alleges she was involuntarily committed at Monmouth Medical Center. (*See id.* ¶¶ 132, 133, 138.) Under Counts XIII through XXI, she claims to have suffered constitutional rights violations at the hands of Monmouth Medical Center and its staff. (*See id.* ¶¶ 412–90.)

Plaintiff was sentenced to a one-year probationary term in October 2011 following her arrest for criminal mischief. (*See id.* ¶ 148.) She contends, under Counts XXII and XXIII, that her probationary officer and his supervisor deprived her of various constitutional rights and denied her access to public records. (*See id.* ¶¶ 491–510.)

On April 18, 2012, Plaintiff was arrested and charged with making terroristic threats and violating the terms of her probation. (*See id.* ¶¶ 156, 157.) She alleges that these charges were also products of a conspiracy between AT&T employees and Middletown Township to maliciously prosecute her. (*See id.* ¶ 158.) Her claims under Counts XXIV through XXVIII and XXXI relate to this arrest and alleged conspiracy. (*See id.* ¶¶ 511–72, 593–612.)

On June 15, 2012, while out on bail, Plaintiff was arrested and charged with attempted arson. (*See id.* ¶¶ 186, 187, 191.) After she was arrested, at some point later that day, she claims her car was searched without a warrant. (*See id.* ¶ 192.) She alleges that she was held until her bail hearing, which occurred on June 27, 2012. (*See id.* ¶¶ 193–95.) At the hearing, her bail amount was set at $75,000. (*See id.* ¶ 195.) Unable to pay, she was held until she was arraigned on December 21, 2012. (*See id.* ¶¶ 205, 206.) These allegations form the basis for her constitutional claims under Counts XXIX, XXX, and XXXII against various Perth Amboy police officers. (*See id.* ¶¶ 573–92, 613–31.)

Plaintiff alleges she suffered further deprivations of her constitutional rights while incarcerated at Middlesex County Correctional Institute, including excessive force and multiple

3

forced psychiatric evaluations. (*See id.* ¶¶ 209–25.) Her claims under Counts XXXIII through XXXV relate to these allegations. (*See id.* ¶¶ 632–72.)

Plaintiff also alleges that, while incarcerated, she was evicted from Greenwood Apartments and her two cars were seized. (*See id.* ¶¶ 226–48.) She contends the eviction and seizures of her cars were unlawful and brings claims against certain public and private actors under Counts XXXVI through XXXIX. (*See id.* ¶¶ 673–737.)

At Plaintiff's arraignment on December 21, 2012, her attempted arson charge was dropped, and her terroristic threat charge was downgraded to harassment. (*See id.* ¶¶ 196, 206.) A year later, on December 13, 2013, her harassment charge was further downgraded to a charge of violating a municipal ordinance, and she was convicted of that offense. (*See id.* ¶ 177.)

On December 19, 2014, Plaintiff filed her initial complaint (ECF No. 1), which the Court dismissed without prejudice pursuant to Federal Rule of Civil Procedure 8(a). (*See* ECF No. 4.) On June 22, 2016, the Court granted Plaintiff's motion to reopen the case (ECF No. 11), and Plaintiff subsequently filed a first amended complaint. (ECF No. 17.) On December 13, 2016, the Honorable Peter G. Sheridan, U.S.D.J., dismissed the first amended complaint with prejudice and the closed the matter. (ECF No. 19.) On January 20, 2017, Plaintiff filed a notice of appeal to the U.S. Court of Appeals for the Third Circuit. (ECF No. 20.) While this action was pending, on June 24, 2017, Plaintiff filed a second action, *Chaula S. Bhatt v. AT&T, Inc.*, No. 16-3715 (D.N.J.) (the "Second Action"), which mostly rehashed the allegations in her initial complaint.

On November 7, 2017, the Third Circuit vacated the Court's dismissal and remanded the matter for further proceedings. *See Bhatt v. Hoffman*, 716 F. App'x 124, 128–29 (3d Cir. 2017) (per curiam). The matter was subsequently reassigned from Judge Sheridan to the Undersigned on January 22, 2018. (ECF No. 35.)

The Court reopened this Action on April 19, 2018, consolidated it with the Second Action, and ordered Plaintiff to file an amended complaint. (ECF No. 36.) On May 15, 2018, Plaintiff filed the present IFP Application and Complaint.

## II. PLAINTIFF'S IFP APPLICATION

An *in forma pauperis* application must be granted when a person produces "an affidavit that includes a statement of all assets [the person] possesses [indicating] that the person is unable to pay . . . fees or give security" to commence suit. 28 U.S.C. § 1915(a)(1). Leave to proceed *in forma pauperis* may be granted on a plaintiff's showing of indigence. *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 (3d Cir. 2008). A court carefully reviews an application and, "if convinced that [the applicant] is unable to pay the court costs and filing fees, . . . will grant leave to proceed *in forma pauperis*." *Id.* (citation omitted).

Plaintiff's IFP Application lists her income at about $440 per month, mostly based on unemployment benefits, along with $1,600 in her checking account. (*See* IFP Appl.) She lists $1,757 in monthly expenses and indicates she provides support to her two parents. (*See id.*) Because Plaintiff's monthly expenses exceed her monthly income, she has shown the $400 filing fee would impose a sufficient financial burden on her. The Court, accordingly, grants Plaintiff's IFP Application.

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court screens the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may by granted, or because it seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555.) Rather, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although pro se pleadings are liberally construed, pro se plaintiffs "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  DISCUSSION

For the foregoing reasons, Plaintiff's Claims under Counts XXXVI through XXXIX must be dismissed as improperly joined. Within Counts I through XXXV, most of Plaintiff's federal claims must be dismissed as time-barred or for failure to state a claim. Plaintiff's state-law claims will also be dismissed for lack of subject matter jurisdiction.

### A.  **Improperly-Joined Claims**

Plaintiff's Counts XXXVI through XXXIX are improperly joined with the rest of the Counts in her Complaint. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants in one action if (A) "any right to relief is asserted against them jointly,

6

severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (B) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20's application, although liberal, "is not a license to join unrelated claims and defendants in one lawsuit." *Baadhio v. Hofacker*, No. 15-2752, 2015 WL 6445802, at *4 (D.N.J. Oct. 23, 2015) (internal quotation marks and citation omitted).

Counts XXXVI through XXXIX relate to the eviction and towing of Plaintiff's cars while she was incarcerated. Even "entertaining the broadest possible scope of action," *see Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (citation omitted), the Court does not find any common questions of law or fact between Counts XXXVI through XXXIX and the rest of the Counts in her Complaint. Therefore, Plaintiff's claims under Counts XXXVI through XXXIX must be dismissed without prejudice as improperly joined and may be refiled under a separate action. *See, e.g., Baadhio*, 2015 WL 6445802, at *4.

### B.     Claims Barred by Statutes of Limitations

"Although the statute of limitations is an affirmative defense, a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required." *Webb v. Perkiomen Sch.*, 349 F. App'x 675, 676 (3d Cir. 2009); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010) (affirming a court's sua sponte dismissal upon a § 1915(e)(2) screening where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (citation omitted)); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

Plaintiff's Complaint relates back to her original pleading insofar as "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

7

attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Plaintiff's claims are, therefore, timely if they would have been timely filed when Plaintiff filed her initial complaint—on December 19, 2014.

Many of Plaintiff's allegations were untimely when Plaintiff filed her initial complaint. Because no tolling doctrine—statutory or equitable—can salvage the untimeliness of Plaintiff's claims, *see infra* Section IV.B.5., most of Plaintiff's claims in her Amended Complaint must be dismissed.

### 1. Plaintiff's 42 U.S.C. § 1981 Claims

Section 1981 claims for workplace discriminatory treatment must be brought within four years of the alleged discriminatory action. *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009). Plaintiff alleges under Counts I and X that various AT&T employees violated § 1981 at times before December 19, 2010. These claims are, accordingly, dismissed as time-barred.

### 2. Plaintiff's 42 U.S.C. §§ 1982, 1983, and 1985 Claims

Sections 1982, 1983, or 1985 claims arising in New Jersey are subject to two-year statute of limitations periods. *Roy v. U-Haul*, No. 14-2846, 2015 WL 375664, at *4 (D.N.J. Jan. 28, 2015) (§ 1982); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (§ 1983); *Club 35, LLC v. Borough of Sayreville*, 2013 WL 1750037, at *2 (D.N.J. 2013) (citing *City v. Bridgewater Twp. Police Dep't.*, 892 F.2d 23, 24 (3d Cir. 1989)) (§ 1985). Federal law governs when a such a claim accrues, which generally occurs "when the wrongful act or omission results in damages." *Dique*, 603 F.3d at 185–86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). A § 1983 false imprisonment claim accrues when the alleged false imprisonment ends, *i.e.*, when the plaintiff was first held pursuant to legal process. *Wallace*, 549 U.S. at 389.

8

Much of Plaintiff's Complaint alleges events that occurred before December 19, 2012. To the extent that Plaintiff's sections 1982, 1983, and 1985 claims accrued before December 19, 2012, they must be dismissed as untimely. Accordingly, Plaintiff's claims for false imprisonment, which accrued no later than her bail hearing on June 29, 2012, are dismissed. Within Counts I through XXXVI, all of Plaintiff's § 1982, § 1983, and § 1985(3) claims—but one—are dismissed as time-barred. What remains is her claim against Warden Bollaro within Count XXXIII for unconstitutional conditions of confinement, which occurred at an unspecified time before December 21, 2012. (*See* SAC ¶ 639.)

### 3. Plaintiff's 42 U.S.C. § 1986 Claims

A § 1986 claim must be brought "within one year after the cause of action has accrued." 42 U.S.C. § 1986. None of Plaintiff's § 1986 claims accrued after December 19, 2013. Therefore, Plaintiff's § 1986 claims must be dismissed with prejudice as untimely.

### 4. Plaintiff's Title VII Claims

Before filing a suit under Title VII, 42 U.S.C. §§ 2000e *et seq.*, Plaintiff must have filed a discrimination charge with the Equal Employment Opportunity Commission within 180 days of her prior employer's allegedly discriminatory actions. 42 U.S.C. § 2000e-5(e)(1); *see also Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Here, Plaintiff has failed to allege that she filed such a charge. Plaintiff's Title VII claims under Counts XXI and XXII are, therefore, dismissed.

### 5. Tolling of Limitations Periods

Plaintiff contends her claims are timely because their limitations periods were tolled under the New Jersey disability tolling statute and the equitable tolling doctrine, but neither provide Plaintiff relief. A plaintiff "who has a mental disability that prevents the person from understanding [her] legal rights or commencing a legal action at the time the cause of action . . . accrues . . . may

9

commence the action . . . within the time as limited by those statutes, after . . . having the mental capacity to pursue the person's lawful rights." N.J. Stat. Ann. § 2A:14-21. Under this rule, if a plaintiff suffers a legal injury when she has a mental disability, the limitations period is tolled until she regains her mental capacity. *See Reed v. Hurd*, No. 15-1305, 2016 WL 1381376, at *3 n.4 (D.N.J. Apr. 6, 2016).

Plaintiff alleges that she was considered "mentally unfit" when she was involuntarily committed from August 8, 2012, through August 18, 2012, and between August 28, 2012, and October 14, 2012. (*See* SAC ¶¶ 22–23.) Assuming Plaintiff's mental disability tolled the limitations period for any claim that accrued during these time periods, however, the limitations periods began to run no later than October 15, 2012. Plaintiff's claims subject to two-year limitations periods were, therefore, still untimely when they were filed in December 2014.

Plaintiff also fails to allege any facts that demonstrate equitable tolling is warranted. "Equitable tolling is a rare remedy to be applied in unusual circumstances . . . ." *Wallace*, 549 U.S. at 396. A limitations period is equitably tolled "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3) where the plaintiff has timely asserted her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). The plaintiff bears the burden of demonstrating she "diligently pursued [her] rights and that some extraordinary circumstance stood in [her] way." *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (internal quotation marks and citation omitted).

Plaintiff argues that she "had no control on any matters of her life" because she was without her belongings. (*See* SAC ¶ 23.) This is not, however, an "extraordinary circumstance" during which Plaintiff was "prevent[ed] . . . from asserting a right despite the exercise of reasonable

10

diligence.'" *Lloyd v. Ocean Twp. Council*, No. 19-600, 2019 WL 4143325, at *5–6 (D.N.J. Aug. 31, 2019) (quoting *Hanani v. State of N.J. Dep't of Envtl. Prot.*, 205 F. App'x 71, 77 (3d Cir. 2006)). Although Plaintiff alleges "continued interferences of defendants to this suit" (SAC ¶ 23), she does not allege what those interferences are. Therefore, equitable tolling does not apply to her claims.

### C. Other Grounds for Dismissal

#### 1. Section 1981 Claims

Plaintiff's remaining § 1981 claims must be dismissed for failure to state a claim. Section 1981 "prohibits racial discrimination in the making and enforcement of contracts," including intentional racially motivated employment discrimination. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). Except for her time-barred § 1981 claim under Count X against Amoroso, Plaintiff either fails to allege she was discriminated against on the basis of her race or that such discrimination had any connection to a contractual relationship. Her remaining § 1981 claims must, therefore, be dismissed.

#### 2. Malicious Prosecution Claims

Plaintiff's § 1983 and § 1985(3) malicious prosecution claims must be dismissed because she has not alleged that any of her related criminal convictions were favorably terminated. Absent a favorable termination, a § 1983 claim that "would necessarily demonstrate the invalidity of the confinement or its duration" is barred, "no matter the relief sought . . . no matter the target of the [person's] suit." *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)). The Third Circuit has characterized the following events as favorable terminations:

      (a)    a discharge by a magistrate at a preliminary hearing, or
      (b)    the refusal of a grand jury to indict, or
      (c)    the formal abandonment of the proceedings by the public prosecutor, or
      (d)    the quashing of an indictment or information, or
      (e)    an acquittal, or
      (f)    a final order in favor of the accused by a trial or appellate court.

*Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (en banc). An acquittal on one charge is not a favorable termination when the plaintiff was convicted of a different crime arising from the same underlying facts during the same criminal prosecution. *Id.* at 188.

Plaintiff's malicious prosecution claims relating to her 2011 criminal mischief conviction, such as her claims under Count VII, must be dismissed because she has not alleged that the prosecution terminated in her favor. Plaintiff's § 1983 claims under Counts XI and XII,[2] though styled differently, are likewise barred because a judgment in favor of Plaintiff under those claims "would necessarily imply the invalidity" of her 2011 conviction. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Plaintiff's malicious prosecution claims arising from the prosecution that culminated in her 2013 conviction of the Middletown municipal ordinance fare no better. Although she alleges her charge was downgraded from making terroristic threats initially, her conviction for the Middletown municipal ordinance was "predicated on the same factual basis." *Kossler*, 564 F.3d at 189. Thus, she fails to allege that this criminal prosecution terminated favorably, and her § 1983

---

[2] In Counts XI and XII, Plaintiff alleges various Defendants circulated e-mail messages with false statements for the purpose of "building a convincing case to prosecute Plaintiff for showing 'unfitness' of Plaintiff for jobs at AT&T due to lies of 'performance issues.'" (SAC ¶ 392; *see also id.* ¶ 405 (alleging that her payroll records were "circulated state wide during all prosecutions to all involved parties listed above").) Under both Counts, Plaintiff fails to allege any "actual, compensable injury" other than "the 'injury' of being convicted and imprisoned." *Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994).

malicious prosecution claims relating to this prosecution under Counts XXIV through XXVII, and XXXI must be dismissed.

Whether *Heck* bars Plaintiff's § 1983 malicious prosecution claims relating to the prosecution for attempted arson is unclear, however. Although Plaintiff alleges that this charge was dismissed at the December 20, 2012, hearing (*see* SAC ¶ 200), which would constitute a favorable termination, *see Kossler*, 564 F.3d at 187, the Court cannot distinguish between the prosecutions of Plaintiff's terroristic threats and attempted arson charges from Plaintiff's Complaint. Nonetheless, Defendants Cartmell and Terranova are absolutely immune from these claims. *See infra* Section IV.C.3. For these reasons, except for Plaintiff's § 1983 malicious prosecution claims against Cartmell and Terranova, the remainder of Plaintiff's § 1983 malicious prosecution claims are barred by *Heck* and must be dismissed.

### 3. Claims Barred by Absolute Immunity

Even if Plaintiff's malicious prosecution claims arising from her dismissed attempted arson charges are not barred by *Heck*, Defendants Cartmell and Terranova are still absolutely immune from Plaintiff's claims. A prosecutor is entitled to absolute immunity against suits concerning work "intimately associated with the judicial phase of the criminal process." *Fogle v. Sokol*, 957 F.3d 148, 164 (3d Cir. 2020) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Although prosecutorial immunity is an affirmative defense, a district court may dismiss a claim upon a § 1915(e)(2) screening if the plaintiff's complaint plainly shows that the defendant is entitled to prosecutorial immunity. *See, e.g., Fallin v. Mueller*, No. 15-00248, 2015 WL 4951280, at *3 (M.D. Pa. Aug. 19, 2015). To determine whether prosecutorial immunity exists, courts look at "the functional nature of the activities rather than [the prosecutor's] status." *Fogle*, 957 F.3d at 159 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

13

Here, Plaintiff's allegations clearly demonstrate that Cartmell would be entitled to assert absolute immunity against Plaintiff's § 1983 malicious prosecution claims. Plainly, Cartmell is immune from Count XXXI, under which Plaintiff alleges Cartmell "attempted to convict" her. (SAC ¶ 603.) Cartmell is also entitled to immunity for retaining Terranova to perform a psychiatric evaluation and to manufacture a "fake medical record to facilitate malicious prosecution." (*Id.* ¶ 665; *see also id.* ¶ 666.) Plaintiff alleges that Cartmell ordered this evaluation pursuant to an order from Monmouth County Superior Court. (*See* SAC ¶¶ 220–22.) Cartmell acted as an "advocate" conducting "work in preparation for trial" and is, accordingly, absolutely immune from these claims. *Fogle*, 957 F.3d at 164.

Terranova, too, is absolutely immune from allegations concerning Plaintiff's psychiatric evaluation. "[I]ndividuals who perform investigative or evaluative functions at a governmental adjudicative entity's request to assist that entity in its decisionmaking process are entitled to absolute immunity." *Consovoy*, 453 F.3d at 178; *see also McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding psychiatrist who performed evaluation of prisoner at court's request was entitled to absolute immunity). Because Plaintiff alleges Terranova was a state-appointed psychiatrist who conducted an evaluation pursuant to a court order, (*see* SAC ¶¶ 220–22), Terranova is absolutely immune from Plaintiff's claims under Count XXV.

### 4. Electronic Communications Privacy Act Claims

Plaintiff alleges that Warshaw violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, by subpoenaing her Internet Protocol ("IP") address from her internet service providers under Count XXVII. The ECPA provides a private remedy against an individual who "intercepts" private electronic communication. 18 U.S.C. § 2511; *see also* 18 US.C. § 2510(4); *see Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as*

14

*amended* (Jan. 20, 2004). A defendant is only liable when he or she "intercepts" information "contemporaneously with [its] transmission." *Fraser*, 352 F.3d at 113. Moreover, IP addresses are not "'contents' of communication" within the meaning of the ECPA. *See In re Nickelodeon Consumer Privacy Litig.*, No. 12-07829, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014). Because Warshaw did not "intercept" any private electronic "communication" within the meaning of the ECPA, Count XXVII must be dismissed.

### 5. Antitrust Claims

Plaintiff cannot maintain any of her asserted antitrust violations under the Sherman Act, 15 U.S.C. §§ 1–7, and the Federal Trade Commission Act, 15 U.S.C. §§ 41–58. Plaintiff has not alleged any "antitrust injury" through any "anticompetitive act." *Bond v. State Farm Ins. Co.*, No. 18-00176, 2019 WL 1493698, at *5 (W.D. Pa. Apr. 4, 2019) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Moreover, the Federal Trade Commission Act does not create a private cause of action. *Boyko v. Am. Int'l Grp., Inc.*, No. 08-2214, 2009 WL 5194425, at *6 n.6 (D.N.J. 2009). For these reasons, Plaintiff's antitrust claims under Counts VII and XVIII are dismissed with prejudice.

### 6. State-Law Claims

Plaintiff's state-law claims must be dismissed for lack of subject matter jurisdiction. To invoke diversity jurisdiction under § 1332(a), a plaintiff must demonstrate "complete diversity between all plaintiffs and all defendants." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). Plaintiff has alleged that she and at least one Defendant are citizens of New

Jersey. (*See, e.g.*, SAC ¶¶ 40, 65.) This lack of diversity destroys jurisdiction under § 1332(a). *See AEI*, 800 F.3d at 104.[3]

Moreover, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims under § 1367. The only remaining federal claim in Plaintiff's Complaint is her claim under the Cable Communications Privacy Act, 47 U.S.C. § 551, against CSC. With nearly all of Plaintiff's federal claims dismissed, her state-law claims "substantially predominate[]" over the action. § 1367(c)(2); *see, e.g.*, *Taylor v. New Jersey*, No. 18-11310, 2020 WL 2731099, at *7 (D.N.J. May 26, 2020). Because the Court lacks original jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1332(a) and otherwise declines to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367, the Court dismisses Plaintiff's state-law claims.

## VI. CONCLUSION

For the foregoing reasons, the Court dismisses with prejudice Plaintiff's Complaint insofar as it seeks any remedy under 42 U.S.C. §§ 1981, 1982, 1985, 1986, 2000e; 18 U.S.C. § 2510 *et seq.*; and 15 U.S.C. §§ 1–15, 41–58. The Court dismisses all of Plaintiff's § 1983 claims in her Complaint with prejudice except for her claim against Warden Bollaro under Count XXXIII. The Court also dismisses all of Plaintiff's state-law claims with prejudice.

*[signature]*

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] The Court also notes that Plaintiff cannot invoke diversity jurisdiction under § 1332(a) because she has pleaded claims against several "unknown" defendants. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 494 (3d Cir. 2006) ("John Doe parties destroy diversity jurisdiction if their citizenship cannot truthfully be alleged." (citation omitted)).